# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1345
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Matthews

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 13, 2021
Filed: February 11, 2022
_____

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Michael Matthews received a longer sentence because he had three prior "violent felon[ies]." 18 U.S.C. § 924(e)(1). He argues that neither of his attempted-second-degree-murder convictions should count because he could have committed them recklessly. We affirm.

I.

In 1992, Matthews fired two shots at a car, hitting the driver with one and his own partner with the other. A Minnesota jury convicted him of two counts of attempted second-degree murder. *See* Minn. Stat. §§ 609.17, subdiv. 1; 609.19(1) (1992).

Years later, when Matthews was caught with a firearm, these convictions played a central role in the district court's[1] decision to treat him as an armed career criminal. Without them, he would have received a *maximum* sentence of 120 months in prison. 18 U.S.C. §§ 922(g)(1); 924(a)(2). With them, however, the court gave him the mandatory *minimum* sentence of 180 months. *Id.* § 924(e)(1).

Everyone agrees that Matthews has two other convictions that count as "violent felon[ies]," one for attempted aggravated robbery and the other for assault. Minn. Stat. § 609.245 (1990); Minn. Stat. § 609.223 (2007). The question is whether at least one of his attempted-second-degree-murder convictions counts as the third. Like the district court, we conclude that the answer is yes.

II.

These days, there are two ways for a prior conviction to count as a "violent felony" under the Armed Career Criminal Act.[2] The first is what courts call the enumerated-offenses clause, which contains a list of crimes that qualify: "burglary,

---

[1]The Honorable Eric. C. Tostrud, United States District Judge for the District of Minnesota.

[2]The so-called residual clause, which counted a felony that "involve[d] conduct that present[ed] a serious potential risk of physical injury to another," was declared void in *Johnson v. United States*, 576 U.S. 591, 596–97 (2015). 18 U.S.C. § 924(e)(2)(B)(ii).

arson, or extortion," as well as any crime that "involves [the] use of explosives." 18 U.S.C. § 924(e)(2)(B)(ii). Attempted murder is not on the list.

The second is when the crime "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). Also called the "force" or "elements" clause, "this language categorically excludes crimes that can be committed recklessly." *United States v. Hoxworth*, 11 F.4th 693, 695–96 (8th Cir. 2021) (citing *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021) (plurality opinion); *id.* at 1835 (Thomas, J., concurring in the judgment)).

Determining the state of mind required to commit attempted second-degree murder requires us to get back to criminal-law basics. The underlying crime that Matthews attempted was second-degree murder, which takes place when a person "causes the death of a human being *with intent to* effect the death of that person or another, but without premeditation." Minn. Stat. § 609.19(1) (1992) (emphasis added).[3] Shorthand for specific intent, the words "with intent to" require "either . . . a purpose to do the thing or cause the result specified" or a belief "that the act, if successful, will cause that result." Minn. Stat. § 609.02, subdiv. 9(4) (1992); *see also State v. Fleck*, 810 N.W.2d 303, 308–09 (Minn. 2012) ("The phrase 'with intent to' is commonly used by the Legislature to express a specific-intent requirement."). Putting the pieces together, Matthews must have "had a purpose to kill [someone] or believed that his actions, if successful, would" lead to that result. *State v. Young*, 710 N.W.2d 272, 278 (Minn. 2006). The former requires intent or purpose, the latter at least knowledge, and both are greater than recklessness. *See Borden*, 141 S. Ct. at 1823–24.

---

[3]Minnesota's second-degree murder statute is divisible, and everyone agrees that Matthews was charged and convicted of an attempt to violate Minn. Stat. § 609.19(1). Appellant's Br. 13; Appellant's Suppl. Br. 11 n.5; *see United States v. Schneider*, 905 F.3d 1088, 1090–91 (8th Cir. 2018) (explaining divisibility).

It makes no difference that Matthews only attempted the crime. All attempts, regardless of the mental state of the underlying crime, are themselves specific-intent crimes. *State v. Moore*, 458 N.W.2d 90, 94 (Minn. 1990) ("An attempted crime is a specific intent crime which requires the specific intent to commit the particular offense."). It follows that, to commit attempted second-degree murder, Matthews had to "inten[d] to commit" a homicide with *at least* knowledge that a death would result. Minn. Stat. § 609.17, subdiv. 1 (1992).

This conclusion is also consistent with the rule—in Minnesota at least—that "one *cannot* attempt to commit a crime which only requires reckless conduct." *State v. Zupetz*, 322 N.W.2d 730, 735 (Minn. 1982) (emphasis added) (quotation marks omitted). If it is impossible to attempt a reckless crime, then the fact that Minnesota courts have long recognized attempted second-degree murder necessarily means that it requires something more. *See, e.g.*, *State v. Dahlstrom*, 150 N.W.2d 53, 58 (Minn. 1967); *State v. Bakdash*, 830 N.W.2d 906, 909 (Minn. Ct. App. 2013). It is that something more that makes it a "violent felony."[4]

## III.

We accordingly affirm the judgment of the district court.

_____

---

[4]To the extent Matthews argues that attempted second-degree murder does not involve the "attempted use . . . of physical force," 18 U.S.C. § 924(e)(2)(B)(i), he is wrong on that front too. When trying to kill someone in the manner required under Minn. Stat. § 609.19(1) (1992), the perpetrator will have to attempt to use "force capable of causing physical pain or injury." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (defining "physical force").